IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HIGHMORE FINANCING CO. I, LLC, a corporation,<br><br>               Petitioner,<br><br>               v.<br><br>EQUINOX BUSINESS LAW GROUP PLLC, a corporation, and SHAWN HARJU, an individual,<br><br>               Respondents. | No. 87621-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Zenith Insured Credit, LLC, entered into a payment arrangement with The Greig Companies, Inc., (TGC) to lend money for the purchase of high-end computer services and other equipment. TGC purchased equipment from StorByte, Inc. Equinox Business Law Group PLLC and its attorney, Shawn Harju, (collectively "Equinox") acted as the escrow agent to the agreements between TGC and StorByte.

In 2024, Highmore Financing Company, who claims Zenith was acting as its agent for the TGC agreements, sued Equinox for breach of fiduciary duty, breach of contract, negligent and intentional misrepresentation, unjust enrichment, and civil conspiracy. Equinox moved for dismissal under CR 12(b)(6), which the court granted. Highmore appealed. Because Highmore was not a party to the escrow agreement, we conclude its claims of fiduciary duty, misrepresentation, and conspiracy fail. However, because Highmore was

not a party to the agreements, the trial court erred when it granted Equinox's

CR 12(b)(6) motion as to Highmore's unjust enrichment claim.

## FACTS

### Background

Highmore is a financing company based in New York City, New York.

Highmore works with Zenith, a buying agent, to identify potential transactions that

Highmore funds, either by purchasing the transaction from Zenith or originating

the transaction based on Zenith's sourcing information. On or about July 2019,

Zenith, on behalf of Highmore, arranged to provide financing to Jason Allen Greig

and his company, TGC, to purchase computer services and equipment to be

utilized by Greig and Jeffrey Sparrow's company, Datassure. It was agreed that

the services and equipment would be purchased from StorByte, a technology

equipment supplier.

On September 24, 2019, Zenith entered a "payment agent agreement"

with TGC.[1] According to the agreement, StorByte would send invoices to TGC

listing the equipment StorByte sold to TGC. TGC would then submit purchase

orders and invoices to Highmore for the purchased equipment.

Less than a week after Zenith entered into the payment agent agreement

with TGC, Zenith and Highmore entered into an "assignment and transfer

---

[1] The record did not include the agreement, but under CR 12(b)(6), we treat all assertions in the complaint as true. Prior to execution of the payment agent agreement, Highmore reviewed due diligence provided by Greig, TGC, Datassure, and Sparrow. It was later discovered that the financial information provided by Grieg on behalf of TGC was fabricated. Both Highmore and Zenith were unaware of this fact.

agreement." Under this agreement, Zenith assigned its interest in the payment agent agreement with TGC to Highmore. Zenith continued to facilitate the transactions between itself and TGC pursuant to the payment agent agreement.

TGC retained Equinox, a Washington-based law firm, and Shawn Harju, an attorney at Equinox, to serve as the escrow agent for the transactions. Between September 2019, and January 2020, TGC, Datassure, StorByte, and Equinox executed four escrow agreements, reflecting five transactions. The escrow agreements listed Zenith as the lender and StorByte, TGC, and Datassure as the parties. Highmore was not a party to any of the agreements.

The escrow agreements provided, "In connection with [the relevant purchase order], issued by TGC to StorByte, . . . StorByte, TGC and Datassure have agreed, and hereby direct, that TGC's funds . . . be paid to Escrow Agent." The agreement directed that "[t]he Escrow Agent will hold any notifications and instructions they may receive as valid without the requirement to investigate or question the sender," and "[w]ith written notice from the Parties, the Escrow Agent will disburse the funds based on the instructions provided within such notice." The agreement also provided, "The parties acknowledge that Escrow Agent may be acting as counsel for StorByte, TGC and/or Datassure, and agree that Escrow Agent may continue to act as such counsel, notwithstanding any dispute or litigation arising with respect to the deposit or his or her duties as an Escrow Agent."[2] Highmore received copies of the escrow agreements.

---

[2] In May 2020, Datassure appointed Harju as its general counsel.

3

After each of the escrow agreements was executed, Equinox received escrow instructions from the signatories of the escrow agreements. Highmore did not receive a copy of the escrow instructions, but Highmore believed the full payments were going to cover TGC's equipment purchases from StorByte. Unbeknownst to Highmore, the escrow instructions had Equinox disburse the funds to multiple sources including, StorByte, Datassure, TGC, and Equinox (itself). Datassure used some of the money Equinox paid to it to repay Highmore.

While Zenith was the lender listed on the escrow agreements, it was Highmore that submitted payments to Equinox. Sparrow, on behalf of TGC, would e-mail Highmore invoices and purchase orders. In total, Highmore paid around $32 million into escrow with Equinox. In 2019, Highmore increased TGC's supplier credit based on TGC's performance to date under the payment agent agreement. Datassure made three repayments to Highmore, totaling around $14 million.

In May 2020, TGC defaulted on its repayment to Highmore. Between May 2020, and July 2021, Zenith and Highmore engaged in discussions with TGC in an effort to recover payment. Highmore began investigating TGC after continued non-payment, and in July 2021, Highmore received partial photocopies of the escrow instructions and discovered its payments to Equinox were not solely used to fund the equipment purchases from StorByte. Highmore also discovered that StorByte's invoices inflated the price of equipment.

4

Procedural History

In May 2022, Highmore initiated a complaint in the Southern District of New York against TGC, Grieg, Datassure, Sparrow, Equinox, and StorByte alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO),[3] breach of contract, fraud in the inducement, unjust enrichment, and conversation. Highmore's claims against Equinox were breach of fiduciary duty, breach of contract, negligence, negligent misrepresentation, and unjust enrichment. Several defendants, including Equinox, moved to dismiss based on lack of personal jurisdiction. The court granted Equinox's motion, as well as all other defendants except Sparrow. In its ruling, the court noted the following regarding the personal jurisdiction issue:

> Nor can Plaintiff argue that the PJ Defendants[4] entered into a contract in New York. Several of the PJ Defendants, namely Lauffin, the Equinox Defendants, and PayRange, were not even parties to the escrow agreements; besides, and more importantly, Plaintiff was not a party to the escrow agreements either. *See* [complaint] (defining "Parties" as Storbyte, TGC, and Datassure). Plaintiff states that it was a "third-party beneficiary" of the escrow agreements, . . . but does not cite contractual language from those agreements or allege any intent by the parties to confer a benefit upon Plaintiff.

The court did rule on the claims against Sparrow, including breach of contract, negligence, and unjust enrichment. The court concluded these claims failed because neither Highmore nor Sparrow were parties to the escrow agreements and Highmore's assertion that it was a third-party beneficiary to the

---

[3] 18 U.S.C. §§ 1961-1968.

[4] "PJ Defendants" collectively refers to Diamond Lauffin, StorByte, Equinox, and PayRange.

agreements was not supported by law. The court also concluded Highmore's unjust enrichment claim failed because it did not allege how Sparrow was personally enriched.

In September 2023, Highmore initiated a complaint in the Circuit Court of Maryland, Baltimore City, against StorByte, alleging claims of fraud, aiding and abetting, breach of fiduciary duty, breach of contract, unjust enrichment, and negligence. StorByte moved to dismiss. The court granted StorByte's motion as to aiding and abetting, breach of fiduciary duty, breach of contract, unjust enrichment, and negligence, but denied the motion as to the fraud claim.

In June 2024, Highmore initiated a complaint in Washington State against Equinox, alleging breach of fiduciary duty, breach of contract, negligent and/or intentional misrepresentation, and unjust enrichment. Equinox moved to dismiss under CR 12(b)(6) and collateral estoppel (issue preclusion). The court held a hearing in October 2024 and subsequently entered an order granting Equinox's CR 12(b)(6) motion and dismissing all claims against Equinox. Highmore appeals.

ANALYSIS

We review a trial court's ruling on a CR 12(b)(6) motion to dismiss de novo. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Group Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). Dismissal under CR 12(b)(6) is appropriate "only if it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery." *Tenor v. AT&T Wireless Services*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998). When considering a CR 12(b)(6) motion

6

to dismiss, we assume all facts alleged in the complaint are true, but we are not "required to accept the complaint's legal conclusions as true." *Roriguez v. Loudeye Corp.*, 144 Wn. App. 709, 717-18, 189 P.3d 168 (2008). " '[A]ny hypothetical situation conceivably raised by the complaint defeats a CR12(b)(6) motion if it is legally sufficient to support plaintiff's claim.' " *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.3d 147 (1995) (alteration in original) (quoting *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978)).

<u>Fiduciary Duty</u>

Highmore contends Equinox owed it a fiduciary duty because (1) Equinox became a trustee for Highmore when it accepted its funds, (2) Highmore was an undisclosed principal and the "true lender" to the agreements, and (3) Highmore was a third-party beneficiary of the agreements. Equinox maintains it did not owe Highmore a duty because (1) Highmore was not a party to the escrow agreements, (2) the escrow agreements did not demonstrate an intention to benefit Highmore, (3) Equinox's duties under the agreements were not assignable, and (4) Equinox followed the escrow instruction. Because Highmore was not a party to the escrow agreements, we conclude its fiduciary duty, misrepresentation, and conspiracy claims fail.

"An escrow agent owes a fiduciary duty to the parties to the escrow to conduct the transaction with scrupulous honesty, skill and diligence, and must comply strictly with the provisions of the escrow agreement." *Styrk v. Cornerstone Invs., Inc.*, 61 Wn. App. 463, 472, 810 P.2d 1366 (1991). The escrow instructions define the duties and limitations of the escrow agent, and the

agent must undertake the tasks in the instructions with " 'ordinary skill and diligence, and due or reasonable care.' " *Denaxas v. Sandstone Ct. of Bellevue, L.L.C.*, 148 Wn.2d 654, 663, 63 P.3d 125 (2003) (internal quotation marks omitted) (quoting *Nat'l Bank of Wash. v. Equity Invs.*, 81 Wn.2d 886, 910, 506 P.2d 20 (1973)).  An escrow agent does not have a duty to compare the escrow instructions and other documents for purposes of unearthing discrepancies. *Denaxas*, 148 Wn.2d at 663.

Here, Highmore cannot show Equinox owed it a fiduciary duty under any of the theories put forth because neither Highmore nor Zenith were parties to the escrow agreements.  Equinox, as escrow to the agreements, only owed a duty to parties of the agreement, and each of the agreements clearly stated the parties to the agreement were StorByte, TGC, and Datassure.[5]  Highmore cites to various cases and text to support its contention that it was owed a duty by Equinox, but in each of the sources cited, a duty was owed only in situations where there was a signed party to an agreement or contract.  *See*, *e.g.*, *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1353-54, (9th Cir. 1988) ("Pope was not a party to these closings. . . . Pope cannot sue in tort for breach of fiduciary duty on the basis of any actions undertaken by the Bank as escrow agent in these individual closings because no duty was then owing her."); *Dana v. Boren*, 133 Wn. App. 307, 313, 135 P.3d 963 (2006) (holding an undisclosed

---

[5]  The agreements stated, "This Escrow Agreement ('Agreement') is made and entered into on [date] between StorByte, Inc., . . . ('StorByte'), The Greig Companies, . . . ('TGC') and Datassure Corp., . . . ('Datassure'), collectively known as the 'Parties.' "

principal could sue to enforce a contract *entered into* by their agent). Because neither Highmore nor Zenith were signatories to the escrow agreements, we conclude Equinox did not owe Highmore a fiduciary duty.

Misrepresentation

Highmore claims that even if it does not have enforceable contract rights under the escrow agreements, Equinox misrepresented that the funds would be disbursed pursuant to the escrow instructions. Because Highmore was not a party to the escrow agreements, Equinox did not make any misrepresentations to Highmore.

> Intentional misrepresentation (fraud) consists of nine elements:
>
> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff.

*W. Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 206, 48 P.3d 997 (2002). The elements of negligent representation are similar to fraud, but negligent misrepresentation does not require that the speaker affirmatively know of the falsities when supplied to the speaker. *See Dewar v. Smith*, 185 Wn. App. 544, 562, 342 P.3d 328 (2015). To prove negligent misrepresentation, the following elements must be established by "clear, cogent, and convincing evidence":

> (1) the defendant supplied information that was false for the guidance of the plaintiff in a business transaction, (2) the defendant knew or should have known that the information was for the purpose of guiding the plaintiff in a business transaction, (3) the defendant was negligent in obtaining or communicating the false

information, (4) the plaintiff relied on the information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Dewar*, 185 Wn. App. at 561-62.  Generally, an omission does not constitute negligent misrepresentation, "[b]ut if a party has a duty to disclose information, the failure to do so can constitute negligent misrepresentation."  *Merriman v. Am. Guar. & Liab. Ins. Co.*, 198 Wn. App. 594, 614, 396 P.3d 351 (2017) (citing *Van Dinter v. Orr*, 157 Wn.2d 329, 333, 138 P.3d 608 (2006)).

Here, Highmore claims that the parties to the escrow agreements, including Equinox, falsely represented that the funds would be disbursed in accordance with the StorByte invoices referenced in the escrow agreements.  But, as discussed *supra*, Highmore was not a party to the escrow agreement.  The only facts Highmore alleges that Equinox represented were those in the agreements, and if Highmore was not a party to the agreements, then it cannot show that Equinox represented false information to Highmore.  Because Equinox did not represent any fact to Highmore via the agreements, we conclude no misrepresentation occurred.

<u>Unjust Enrichment</u>

Highmore alleges Equinox was unjustly enriched when it distributed funds inconsistent with the escrow agreements.  Equinox contends the trial court properly dismissed Highmore's unjust enrichment claim because a valid contract existed.  Because Highmore was not a party to the escrow agreement, the trial court erred when it dismissed Highmore's unjust enrichment claim.

Unjust enrichment occurs when one party " 'retains money or benefits which in justice and equity belong to another.' " *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160, 810 P.2d 12 (1991)). To prevail on an unjust enrichment claim, the following elements must be established: (1) " 'a benefit conferred upon the defendant by the plaintiff,' " (2) " 'an appreciation or knowledge by the defendant of the benefit,' " and (3) " 'the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.' " *Young*, 164 Wn.2d at 484 (internal quotation marks omitted) (quoting *Bailie*, 61 Wn. App. at 159-60). A party to a contract may not bring an unjust enrichment claim where there is an existing valid express contract. *MacDonald v. Hayner*, 43 Wn. App. 81, 85-86, 715 P.2d 519 (1986) (" 'A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.' ") (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943)).

Here, Equinox contends Highmore cannot bring an unjust enrichment claim because a valid contract exists, but that assertion would only be true if Highmore was a party to the contract. If Highmore was not a party to the escrow agreements, as Equinox alleges, then an unjust enrichment claim is proper. Highmore's complaint alleges Equinox accepted payment from Highmore and knowingly distributed funds to itself inconsistent with the escrow agreements.

11

These facts, if true, are sufficient to establish a claim of unjust enrichment. Accordingly, trial court erred when it dismissed Highmore's unjust enrichment claim.

### Conspiracy

Highmore alleges Equinox conspired with the other parties to the escrow agreements to unlawfully obtain funds from Highmore. Equinox contends Highmore's conspiracy claim fails because Highmore's underlying claims fail. We agree with Equinox.

To establish a conspiracy claim, the plaintiff " 'must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.' " *Puget Sound Sec. Patrol, Inc. v. Bates*, 197 Wn. App. 461, 470, 389 P.3d 709 (2017) (quoting *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740, 998 P.2d 367 (2000)).

Here, Highmore and Equinox agree that a civil conspiracy claim is dependent upon underlying causes of action. Because neither Highmore nor Zenith were parties to the escrow agreements and Highmore's underlying claims fail, the trial court properly dismissed the civil conspiracy claim.

### Collateral Estoppel

In its response, Equinox contends Highmore's claims are barred by collateral estoppel (issue preclusion). Because the trial court properly dismissed Highmore's fiduciary duty, misrepresentation, and conspiracy claims under

CR 12(b)(6), the issue of collateral estoppel only applies to Highmore's unjust enrichment claim. Because the issues in this proceeding are not identical to the previous cases in Maryland and New York, and application of collateral estoppel would work an injustice against Highmore, collateral estoppel does not apply to Highmore's unjust enrichment claim.

Whether collateral estoppel applies is an issue of law that this court reviews de novo. *Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 872, 409 P.3d 160 (2018). Collateral estoppel "bars the relitigating of issues that were decided in a previous proceeding involving the same parties." *Sprague*, 189 Wn.2d at 898-99. The purpose of collateral estoppel is to "promote[] judicial economy and serve[] to prevent inconvenience or harassment of parties," as well as preserve judicial resources. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). For collateral estoppel to apply, the party asserting the claim must establish the following four elements:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen*, 152 Wn.2d at 307.

As to the first factor, issues are identical in subsequent proceedings if "[t]he controlling facts and applicable legal rules . . . remain unchanged." *Reeves v. Mason County*, 22 Wn. App. 2d 99, 111-12, 509 P.3d 859 (2022). For the issues to be identical, they must arise in the same context. *McDaniels v.*

13

*Carlson*, 108 Wn.2d 299, 305, 738 P.2d 254 (1987). Even if the claims raised in the second case involve identical issues and facts, collateral estoppel will not apply if the " 'legal principles that contributed to the rendering of the first judgment' " are different in the second case. *Lemond v. Dep't. of Licensing*, 143 Wn. App. 797, 805, 180 P.3d 829 (2008) (internal quotation marks omitted) (quoting *Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974)). To be considered a final judgment on the merits, satisfying the second factor, the prior court must have resolved the issue on the merits of the claim, as opposed to procedural grounds. *Campbell v. Fernandez*, 14 Wn. App. 2d 769, 776-77, 473 P.3d 675 (2020). A dismissal for lack of jurisdiction is not a final judgment because it does not resolve the underlying merits of the claim. *See Ullery v. Fulleton*, 162 Wn. App. 596, 605-06, 256 P.3d 406 (2011). Factor three requires that the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding. A defendant who was not a party to prior adjudication may invoke collateral estoppel defensively against a party to the earlier action. *State Farm Mut. Auto. Ins. Co. v. Amirpanahi*, 50 Wn. App. 869, 871, 751 P.2d 329 (1988). Finally, factor four requires that "the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first forum." *Christensen*, 152 Wn.2d at 309.

Here, Equinox cannot meet the requirements for collateral estoppel. While the claims against Equinox in the New York case were identical to the claims here, those claims were dismissed without prejudice because of lack of jurisdiction. Equinox does not deny that order was not final, but contends that

14

the court's order granting Sparrow's motion to dismiss, which was a judgment on the merits, should have preclusive effect. But allowing preclusive effect of the judgment granting Sparrow's motion to dismiss would work an injustice to Highmore for several reasons.

First, the New York court dismissed the claims against Sparrow because Highmore failed to allege how Sparrow was personally enriched. But Highmore's complaint here did indicate how Equinox was personally enriched. Therefore, the controlling facts in the New York case against Sparrow are not the same as the facts against Equinox. Furthermore, Equinox played a unique role as an escrow agent, and a different analysis concerning the claims may apply. Accordingly, collateral estoppel does not apply to the prior action in New York.

A similar conclusion can be reached concerning the Maryland case. First, Equinox was not even a party to that action. While the party asserting collateral estoppel does not need to be a party to the first action, the facts and applicable legal rules must remain unchanged. The court dismissed Highmore's unjust enrichment claim against StorByte, but StorByte was in a significantly different position than Equinox. Equinox was the escrow agent to the agreements, not a party like StorByte. Accordingly, an unjust enrichment analysis would rely on distinct legal principles, and it would be an injustice to Highmore not to allow it to have a full and fair hearing on the issues. For these reasons, we conclude collateral estoppel does not apply to Highmore's claims against Equinox.

We affirm the trial court's dismissal of Highmore's fiduciary duty, misrepresentation, and conspiracy claims, and remand for further proceedings with regard to Highmore's unjust enrichment claim.

_____

WE CONCUR:

_____    _____
Díaz, J.    Mann, J.