**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| DANA PROVENCHER, an individual, ARIANA PROVENCHER, an individual, and their marital community, | No.  59265-7-II |
| Appellants, | |
| v. | |
| PIERCE COUNTY, a subdivision of the State of Washington d/b/a PIERCE COUNTY SHERRIFF'S DEPARTMENT, and SHANE EDWARD EPPENS, an individual, | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Shane Eppens was driving at a high speed while being chased by a deputy from the Pierce County Sheriff's Office.  After running at least one red light and several stop signs, Eppens collided with a car driven by Dana Provencher, who was seriously injured by the collision.

Dana and his wife, Ariana, brought a lawsuit against both Eppens and the County related to the high-speed chase.  Eppens did not defend the lawsuit.

The County, however, raised several affirmative defenses, including that the Provenchers' damages were proximately caused by the intentional conduct of Eppens.  The County contended that under chapter 4.22 RCW any liability attributed to the County must be severed from Eppens' intentional acts.  The Provenchers moved twice at different times to strike the County's affirmative defenses pertaining to Eppens' purported intentional conduct.  The trial court denied both motions.

Following a trial, the jury returned a verdict, which found that although both Eppens and the County were negligent (and that some of Eppens' conduct was intentional), the County was not a proximate cause of the Provenchers' injuries. However, despite not finding the County to be a proximate cause of the injuries, the jury still assigned a percentage of fault to the County. This created an inconsistency in the verdict.

After the verdict was announced, the trial court discharged the jury. But within minutes of the discharge, the parties noticed the inconsistency in the verdict. The Provenchers immediately moved for a mistrial, arguing that the verdict was irreconcilable. The trial court reserved ruling on the Provenchers' motion, recalled the jury (which was still in the jury room) back to the courtroom, withdrew the discharge, and told them that they might need to continue to deliberate.

Following a weekend recess, the Provenchers moved for a new trial, arguing that the verdict was irreconcilably inconsistent and could not be cured. The trial court denied the motion. Instead, the trial court polled each juror to ensure that they had not been contaminated during the short period of their discharge and, having satisfied itself, issued another verdict form to the jury and instructed them to continue their deliberations.

The jury once again found that the County was not a proximate cause of the Provenchers' injuries. But this time the jury did not assign any fault to the County. With the repetition of the jury's finding that the County was not a proximate cause of the Provenchers' injuries, the trial court dismissed the Provenchers' claims against the County.

The Provenchers appeal, raising numerous arguments, including that the trial court erred by (1) denying their motion to strike the County's intentional conduct defense and their related motion under CR 50(a) for a judgment as a matter of law, (2) denying the Provenchers' motion for

a new trial following the first verdict, (3) giving the jury several erroneous instructions pertaining to Eppens and intentionality of conduct such as the proximate cause instruction, as well as giving the jury a superseding cause instruction, and (4) denying the Provenchers' CR 36 motion to admit their unanswered requests for admission (RFAs) directed at Eppens. The Provenchers also request costs on appeal.

We hold that regardless of whether the trial court erred in its decisions identified by the Provenchers, the jury's finding that the County was not a proximate cause of the Provenchers' injuries is dispositive of the County's liability, making those alleged errors harmless. We affirm the judgment.

FACTS

I. BACKGROUND

On the morning of November 12, 2019, County law enforcement engaged in a high-speed chase with Eppens. During the pursuit, Eppens drove through at least one red light, multiple stop signs, exceeded the speed limit, drove in the oncoming lane of traffic, and refused to pull over despite law enforcement having their lights and siren activated. After approximately four minutes, Eppens crashed into a car driven by Dana Provencher.

In May 2022, the Provenchers filed a complaint against the County and Eppens for negligence. The County raised several "affirmative defenses," including that the Provenchers' damages were proximately caused by the intentional conduct of Eppens and that, therefore, the County could not be held jointly and severally liable for Eppens' conduct.

II. PRETRIAL PROCEEDINGS

A. THE PROVENCHERS' RFAS TO EPPENS

In February 2023, the Provenchers served Eppens with six RFAs. The Provenchers' RFAs were mostly related to the County being a cause in fact of the Provenchers' injuries. For example, Eppens was asked to admit that if law enforcement had stopped pursuing him, he would have stopped speeding. Similarly, Eppens was asked to admit that if he was not being pursued, he would not have run the red light at the intersection where he collided with Provencher. Eppens, who was not actively participating in defending the lawsuit, did not answer the RFAs.

B. THE PROVENCHERS' MOTION TO STRIKE THE COUNTY'S AFFIRMATIVE DEFENSE

In March, the Provenchers filed a CR 12(f) motion to strike the County's affirmative defense relating to alleged "intentional acts" and "segregated damages." Clerk's Papers (CP) at 599 (internal quotation marks omitted). Relying on our Supreme Court's decision in *Tegman v. Accident & Medical Investigations, Inc.*,[1] and its interpretation of chapter 4.22 RCW, the Provenchers argued that segregating damages was not permitted unless the County could show that Eppens committed an *intentional tort*, not just intentional acts. The Provenchers further argued that it would be inappropriate to segregate liability arising out of Eppens' intentional acts from the County's liability because there was no evidence that Eppens had the intent to cause harm specifically to Provencher.

The County responded that *Tegman* did not require it to show that Eppens had committed an intentional tort or had the intent to injure Provencher specifically. All *Tegman* required was

---

[1] 150 Wn.2d 102, 75 P.3d 497 (2003).

that the County show Eppens' acts were intentional. According to the County, Eppens acted intentionally because he engaged "in a series of intentional acts, each individual and consecutive act creating the situation which caused Plaintiff's harm in the collision." CP at 708. The County noted that Eppens drove fast, through stop signs, and through red lights, all of which were intentional acts. According to the County, this series of events showed that Eppens knew he was driving in a way that "could cause extensive harm to another vehicle and its occupants." CP at 709.

The trial court denied the CR 12(f) motion to strike the affirmative defense. The trial court ruled that the County was not required to prove that Eppens' intent was to cause harm specifically to Provencher. Instead, the trial court reasoned that the County merely needed to show that there was evidence that Eppens' conduct was intentional. And because there was evidence that Eppens fled from law enforcement and ran stop signs and red lights, the trial court concluded that the jury could find that Eppens' conduct was intentional.

C.  THE PROVENCHERS' MOTION TO HAVE RFAS DEEMED ADMITTED

The Provenchers later filed a CR 36 motion to establish that the facts contained in Eppens' unanswered RFAs were deemed admitted. In their motion, the Provenchers characterized the RFAs as pertaining to issues that were not in substantial dispute, such as whether "Eppens intended to cause a motor vehicle collision in his efforts to flee law enforcement and whether he would have been driving in such a manner had he not been being chased." CP at 888. The County opposed the Provenchers' CR 36 motion, arguing, in part, that Eppens did not have "the ability to stipulate" to the RFAs because they were directed at questions pertaining to the County's liability. CP at 909. The trial court denied the Provenchers' CR 36 motion.

III. TRIAL

    A. DEPUTY GUDAITIS' TESTIMONY

The case proceeded to a jury trial. Several witnesses, including Pierce County Sheriff's Deputy Jeffrey Gudaitis, testified consistently with the facts set forth above.

Deputy Gudaitis also discussed the circumstances leading up to his pursuit of Eppens. He explained that on November 12, he observed a vehicle that was associated with someone who had outstanding felony warrants. Eppens, who was later discovered to be the driver of the vehicle, fit the description of the person with outstanding warrants. Deputy Gudaitis approached Eppens and asked if the vehicle was his and whether he had outstanding warrants. Eppens gave Deputy Gudaitis a false name. While the deputy was checking the name provided to him, Eppens accelerated away, running through a stop sign.

The deputy quickly began a pursuit of Eppens with his emergency lights and siren activated. Eppens refused to pull over. The pursuit reached speeds of 60 to 80 miles per hour at times on local roads. While the pursuit was ongoing, the deputy testified that another law enforcement officer anticipated Eppens' route and positioned "Stop Sticks," hard plastic strips with metal spikes, at an intersection in order to deflate Eppens' tires. Verbatim Rep. of Proc. (VRP) (Jan. 10, 2024) at 14. Eppens hit the stop sticks, but he managed to continue until he collided with Provencher's vehicle.

After several days of testimony from other witnesses, trial testimony concluded. Eppens did not testify.

B.  THE PROVENCHERS' CR 50(a) MOTION

Before the jury began deliberations, the Provenchers moved again "to strike" the County's affirmative defenses pertaining to intentional conduct under CR 50(a).  CP at 1379.  Like the Provenchers' earlier CR 12(f) motion, the Provenchers contended that *Tegman* required the County to show that Eppens committed an intentional tort for any damages to be segregated under chapter 4.22 RCW.  And the Provenchers argued that the County had not shown with trial testimony that Eppens had committed an intentional tort.

As before, the County took the position that it did not need to prove that Eppens committed an intentional tort; to avoid joint and several liability under chapter 4.22 RCW, it needed to show only that Eppens acted intentionally.  And the trial testimony showed that Eppens acted intentionally because he drove through red lights and a stop sign.  On the strength of this evidence, the County contended that the affirmative defenses should be submitted to the jury.

Once again, the trial court denied the Provenchers' motion, explaining that in its view, the case law required proof only of "intentional acts," which the trial testimony supported.  VRP (Jan. 24, 2024) at 15.

C.  JURY INSTRUCTIONS

Following the trial court's ruling, the parties discussed jury instructions.  Among the finalized jury instructions were several instructions mentioning intentionality and intentional acts.

For example, the jury was instructed on proximate cause (concurring with other causes) in jury instruction 20.  Jury instruction 20 was virtually identical to the pattern jury instruction, 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 15.04 (7th ed.

2019) (WPI), except that it included two references to intentional conduct. With the modification

from the pattern instruction illustrated below with italics, jury instruction 20 stated:

> There may be more than one proximate cause of the same injury. If you find that the defendants acted negligently or *intentionally* and that such negligence or *intentional acts* was a proximate cause of injury or damage to the plaintiff, it is not a defense that some other cause may also have been a proximate cause.
>
> However, if you find that the sole proximate cause of injury or damage to the plaintiff was some other cause then your verdict should be for the defendant.

CP at 1470 (emphasis added). The Provenchers objected to the modifications to jury instruction

20.

The trial court also gave other instructions that were related to the concept of "intent,"

including jury instruction 6 (explaining the parties' claims), jury instruction 9 (burden of proof of

the County's affirmative defense regarding intentional conduct), jury instruction 11 (defining

intent) and jury instruction 28 (discussing apportionment of fault). The Provenchers did not object

to instructions 6 or 9, but did object to instructions 11 and 28. The Provenchers also offered a

"curative instruction" that defined an "intentional act," which was not given by the trial court.

In addition, the trial court gave a jury instruction about superseding causes (jury instruction

21). The Provenchers did not object.

IV. JANUARY 26 SPECIAL VERDICT AND MISTRIAL MOTION

The jury rendered its verdict on Friday, January 26. The jury found that both the County

and Eppens were negligent. However, in answering "question 2," the jury found that only Eppens,

not the County, was a proximate cause of the Provenchers' injuries.

QUESTION NO. 2: Was such negligence a proximate cause of the injuries to the Plaintiffs?

(Answer "yes" or "no" after the name of each defendant you found negligent in response to Question 1.)

ANSWER:

Pierce County [NO]

Shane Edward Eppens [YES]

CP at 1484. The jury then answered "yes" to the question of whether Eppens "intentionally cause[d]" the Provenchers' damages, which, in effect, meant that the jury characterized some of Eppens' conduct as both negligent *and* intentional. CP at 1484.

However, notwithstanding the jury's finding that the County's negligence was *not* a proximate cause of the Provenchers' injuries, the jury still apportioned fault to the County in response to question 5.

QUESTION NO. 5: Assume that 100% represents the total combined fault that proximately caused Dana and Arian Provencher's injuries and damages. What percentage is attributable to each defendant whose negligence and/or intentional conduct you found to have been a proximate cause of the injuries to Plaintiffs? Your total must equal 100%.

| ANSWER: | | |
|---|---|---|
| | To Shane Eppens for Negligence: | 50% |
| | To Shane Eppens for Intentional Acts: | 25% |
| | To Pierce County for Negligence: | 25% |
| | TOTAL: | 100% |

CP at 1485.

After the jury's verdict was announced, the trial court discharged the jury. Within minutes of the jury being discharged, the parties apparently noticed that the jury's verdict appeared to

9

include a contradiction—that the jury assigned 25 percent liability to the County in question 5 despite finding that the County was *not* a proximate cause of the injuries in question 2.

The Provenchers immediately moved for a mistrial. The Provenchers argued that the jury had rendered an inconsistent verdict in two ways. First, the Provenchers identified the inconsistency noted above related to proximate cause. And second, the jury had found that Eppens was liable for *both* negligence and "intentional acts," which, the Provenchers argued, did not "make sense." CP at 1485; VRP (Jan. 26, 2024) at 10.

In response, the trial court noted that it had "only been . . . six minutes or seven minutes" since the jury had been released and that they were all still in the jury room. VRP (Jan. 26, 2024) at 11. At that point, the trial court brought the jury back into the courtroom, withdrew its discharge, and informed the jury that they would need to continue to abide by the cautionary instructions. Although a couple of jurors expressed frustration, the trial court also informed the jury that further deliberation could be required. The trial then recessed for the weekend until Monday.

V. THE PROVENCHERS' MOTION (JANUARY 29) FOR A NEW TRIAL

The following Monday, the Provenchers filed a formal motion for a new trial under CR 59(a). The Provenchers argued that a new trial was required because the verdict was irreconcilably inconsistent, pointing again both to the proximate cause determination and to the jury's finding that Eppens acted both intentionally and negligently. The Provenchers argued that the verdict could not be cured because several jurors expressed concerns about returning to deliberate and it was "clear" that they were "irritated and annoyed" with having to come back. 1 VRP (Jan. 29, 2024) at 9. The Provenchers also argued that there was no evidence to support

the jury's decision that the County was negligent but not a proximate cause of the Provenchers' injuries.

The County responded that there were no irreconcilable inconsistencies in the jury's verdict and that it was "perfectly plausible" that a jury would conclude that Eppens proximately caused the Provenchers' injuries and not the County. 1 VRP (Jan. 29, 2024) at 12.

As for the jury's finding that Eppens acted both intentionally and negligently, the County essentially argued that once the jury found that the County was not a proximate cause of the Provenchers' injuries, any issues with characterizing Eppens' conduct had "nothing to do" with the County's liability. 1 VRP (Jan. 29, 2024) at 13.

The trial court denied the Provenchers' motion for a new trial.[2] The trial court acknowledged that although the verdict form could have been drafted better, the jury had been discharged only for a short period of time. Because of this, the inconsistency in the verdict form was curable. The trial court stated:

> I think this is a unique situation in that the [c]ourt was able to reinstate the jury in a very, very short period of time. They did not have contact with others. They were escorted. In particular to—this particular courtroom is unique in that they don't even go into a public hallway to go into a jury room. They were in the jury room for a few moments before [the judicial assistant] went to tell them that they couldn't leave. We brought them back out and they were instructed that they were no longer released.

1 VRP (Jan. 29, 2024) at 24.

The trial court then announced that it would poll the jury about potential contamination during the few minutes they were discharged and, if nothing concerning occurred during that interval, then it would resubmit the proximate cause question to the jury with a new verdict form

---

[2] The trial court did not address the Provenchers' earlier mistrial motion.

11

(that would clarify that only those parties whom were a proximate cause of damages should have a percentage of fault apportioned to them).  The Provenchers objected.

The trial court noted the objection and began to poll the jury.  Each juror was asked separately whether they had communications with anyone other than their fellow jurors about the case during the brief interval of the discharge.  Each juror answered that they had not.  The trial court also asked whether anyone had done any research or had used their phone to look up anything during that interval.  Each juror answered that they had not.

VI.  SECOND SPECIAL VERDICT (JANUARY 29) AND APPEAL

Following the polling of the jury, the trial court gave the jury a new verdict form that had two questions.  The first question was similar to question 2 from the initial verdict form.  It asked, "Having found both defendant Pierce County and defendant Shane Edward Eppens negligent, was such negligence a proximate cause of the injuries to the Plaintiffs?"  CP at 1500.  However, this time the question included a revised instruction to clarify that the jury should not apportion fault to a party which was not a proximate cause of the injuries; the revision read,

> If you answer "no" as to either defendant, do not answer the next question as to that defendant.  If you answered "yes" to either defendant, continue to the next question as to that defendant.

CP at 1500.

The verdict form's second question, as before, required the jury to assign percent liability to each defendant found to be a proximate cause.

Later that same day, the jury reached a second verdict.  As it had in its initial verdict, the jury again found that the County was not a proximate cause of the Provenchers' injuries. However, with the benefit of the revised instructions, the jury's answer to the second question was different.

12

This time, the jury assigned zero percent fault to the County, consistent with its decision on the proximate cause question.

The trial court accepted the jury's verdict and discharged the jury. The trial court entered judgment against Eppens and dismissed the Provenchers' claims against the County.

The Provenchers appeal.

ANALYSIS

The Provenchers make numerous arguments, including that the trial court erred by (1) denying their pretrial motion to strike the County's intentional conduct defense and by later denying their related motion during trial under CR 50(a), (2) denying the Provenchers' motion for a new trial after the first verdict, (3) giving the jury several erroneous instructions pertaining to Eppens and intentionality of conduct such as the proximate cause instruction, as well as giving the jury a superseding cause instruction, and (4) denying the Provenchers' CR 36 motion to admit their unanswered RFAs directed at Eppens. The Provenchers also request costs on appeal.

The County responds, in part, with a simple argument that the jury, twice, returned a verdict that found the County was not the proximate cause of the Provenchers' damages. The County contends that this finding by the jury is dispositive and dispenses with all of the Provenchers' arguments. We agree with the County.

I. THE JURY'S DISPOSITIVE PROXIMATE CAUSE DETERMINATION

As noted above, the jury twice answered that the County did not proximately cause the Provenchers' damages. The Provenchers appear to make several arguments about why the jury's

proximate cause determination is not dispositive. We have grouped these arguments into five categories.[3]

First, the Provenchers argue the verdicts were invalid. They contend both that the process was defective (i.e., the trial court should have never reconstituted the jury to redeliberate) and that the verdicts were substantively irreconcilable, even after the jury redeliberated. The Provenchers argue that the trial court should have, instead, granted their motion for a new trial.

Second, the Provenchers suggest that the jury's proximate cause determination was corrupted by errors in the jury instructions, notably the proximate cause jury instruction (instruction 20). They contend that the proximate cause jury instruction confusingly included the concept of intentionality which was misleading and contrary to the law under *Tegman* and chapter 4.22 RCW.

Third, the Provenchers assert that the jury was also confused by the jury instruction on superseding cause (instruction 21) and suggest that this confusion tainted its proximate cause decision.

---

[3] In reply to the County's argument that the jury's proximate cause determination is dispositive, the Provenchers did not provide a detailed rebuttal; the Provenchers merely stated:

> [The County] pivots to the procedural argument[] that this [c]ourt should focus only on the jury's proximate cause ruling . . . As for [this argument], the Provenchers have already noted the trial court's erroneous instructions on causation, including superseding cause.

Reply Br. of Appellants at 30-31. Such a generalized reply forced the exercise of some discretion in the characterization of the Provenchers' arguments and how they would be responsive.

Fourth, the Provenchers point to the trial court's failure to have their RFAs deemed admitted and claim that the admissions were "key to the . . . [issues of] breach and causation," which suggests an impact on the jury's proximate cause decision. Reply Br. of Appellants at 25.

Fifth, the Provenchers list within their assignments of error several other jury instructions that appear to touch on issues of intentional conduct, which, presumably could also have some relevance to the jury's proximate cause decision.

We address each of these categories in turn.

A. WAS THE JURY'S VERDICT INVALID

1. Was the process used for the second verdict invalid?

The Provenchers appear to argue that the jury verdict was invalid because the trial court allowed the jury to redeliberate for the second verdict rather than declaring a mistrial. According to the Provenchers, the trial court did not have the authority to bring the jury back once discharged and this "was not an error-correcting situation." Br. of Appellants at 59. The Provenchers tie this argument to the trial court's failure to grant their motion for a mistrial.

We review the trial court's denial of a mistrial motion for an abuse of discretion. *Rookstool v. Eaton*, 12 Wn. App. 2d 301, 307, 457 P.3d 1144 (2020). We also generally review a trial court's denial of a motion for a new trial for an abuse of discretion. *Budd v. Kaiser Gypsum Co., Inc.*, 21 Wn. App. 2d 56, 64, 505 P.3d 120, *review denied*, 199 Wn.2d 1030 (2022). However, we review the trial court's denial of a new trial de novo when it is based on an issue of law. *Mears v. Bethel Sch. Dist. No. 403*, 182 Wn. App. 919, 927, 332 P.3d 1077 (2014), *review denied*, 182 Wn.2d 1021 (2015).

RCW 4.44.340 concerns the general procedure that trial courts should follow when a jury is discharged or prevented from reaching a verdict. It provides for a new trial in the event that a jury is discharged. *See* RCW 4.44.340. The statute says,

> In all cases where a jury are discharged or prevented from giving a verdict, by reason of accident or other cause, during the progress of the trial or after the cause is submitted to them, the action shall thereafter be for trial anew.

*Id.*

Irreconcilable verdicts can create the need for a new trial. "A verdict is irreconcilable when 'the verdict contains contradictory answers to interrogatories making the jury's resolution of the ultimate issue impossible to determine.' " *Espinoza v. American Commerce Ins. Co.*, 184 Wn. App. 176, 197, 336 P.3d 115 (2014) (quoting *Estate of Stalkup v. Vancouver Clinic, Inc.*, 145 Wn. App. 572, 586, 187 P.3d 291 (2008)). When the jury's resolution is impossible to determine, a new trial is generally appropriate. *Id.* at 196.

Notwithstanding that a new trial is generally appropriate for irreconcilable verdicts and trial errors that are discovered after the jury has been discharged, there are exceptions. Specifically, a new trial is not required when a problem with a jury verdict is caught quickly and before outside influences have tainted the verdict. *State v. Clements*, 4 Wn. App. 2d 628, 642, 646-47, 423 P.3d 253 (holding that the trial court did not err in allowing the jury to correct the verdicts where the jury had been discharged only for a few minutes and where it was evident that jury's verdict had not been contaminated during further deliberations), *review denied*, 192 Wn.2d 1007 (2018).

Here, the facts are more closely aligned with those situations where further deliberation was permitted. Although the process straddled a weekend, the actual time the jury was discharged

was very short.  After the first (arguably irreconcilable) verdict, the jury was discharged for only six to seven minutes before the trial court withdrew its discharge and instructed them that further deliberations could be necessary.  The following Monday, the trial court polled the jury and each juror confirmed that they did not communicate with anyone outside of their fellow jurors during the six or seven minutes they were discharged.  Each juror also confirmed that they had not done any independent research.  The short amount of time together with the jury's answers during this polling confirm that the trial court did not abuse its discretion in deciding the jury was not tainted.

Accordingly, because the jury was discharged for only a few minutes and outside influences had not tainted the jury, the trial court was permitted to withdraw the jury's discharge and order further deliberations.  *See Clements*, 4 Wn. App. 2d at 646-47; *see also Estate of Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. 828, 867-68, 313 P.3d 431 (2013) (holding that jury's special verdict answers were not irreconcilably inconsistent because they could be harmonized).  Thus, the trial court did not abuse its discretion when it denied the Provenchers' motion for a new trial and permitted the jury to reach the second verdict.

2. Was the verdict substantively irreconcilable?

Somewhat separate from their procedural argument, the Provenchers appear to argue that the jury's verdict (and, thus, its proximate cause determination) was invalid because it was irreconcilably inconsistent for two substantive reasons.  First, the Provenchers argue that the jury's verdict was irreconcilable because the jury assigned, in the first verdict, liability to the County despite its decision that the County was not a proximate cause of the damages.  And second, because the jury found that Eppens acted both negligently and intentionally in both the first verdict *and* the second verdict, both verdicts remain irreconcilable.  We reject both arguments.

17

The Provenchers' first argument appears to focus on the first verdict's inconsistency. But the second verdict remedied this inconsistency. And we have already determined the second verdict was a result of a valid second deliberation. Thus, the jury's answer in the second special verdict clarified any inconsistency in the first special verdict.

Second, even after the jury redeliberated, the Provenchers argue that the jury's characterization of Eppens' conduct as both negligent and intentional means that the entire verdict is irreconcilable and that a new trial was required. But, as discussed in more detail below, even if the trial court erred in its instructions to the jury about differentiating between negligent conduct and intentional conduct, those issues are relevant solely to apportioning fault among tortfeasors under chapter 4.22 RCW—tortfeasors who proximately caused the plaintiff's damages. Once the jury determined that the County was not a proximate cause of the Provenchers' damages, any issues relevant to apportioning fault were irrelevant to the County's liability. *See Roemmich v. 3M Co.*, 21 Wn. App. 2d 939, 949, 509 P.3d 306 ("To be liable for negligence, a plaintiff must show that a defendant's actions were a proximate cause of the plaintiff's injury."), *review denied*, 200 Wn.2d 1015 (2022). Accordingly, we reject the argument that the jury's characterization of Eppens' conduct made the jury's verdict invalid as it relates to its proximate cause decision about the County. *Cf. Nania v. Pac. Nw. Bell Tel. Co., Inc.,* 60 Wn. App. 706, 709, 806 P.2d 787 (1991) (concluding, in part, that the jury's proximate cause determination made any inconsistencies in other aspects of the verdict form "surplusage").

B. PROXIMATE CAUSE INSTRUCTION AND THE PARTIES DISPUTE ABOUT *TEGMAN*

Next, the Provenchers also cast doubt on the jury's proximate cause determination by contending that the proximate cause instruction (concurring with other causes) (jury instruction

20) improperly infused the concept of intentionality into the instruction. As noted above, jury instruction 20 followed the pattern jury instruction with slight modifications shown in italics below:

> There may be more than one proximate cause of the same injury. If you find that the defendants acted negligently or *intentionally* and that such negligence or *intentional acts* was a proximate cause of injury or damage to the plaintiff, it is not a defense that some other cause may also have been a proximate cause.
>
> However, if you find that the sole proximate cause of injury or damage to the plaintiff was some other cause then your verdict should be for the defendant.

CP at 1470 (emphasis added); *see* 6 WPI 15.04. The Provenchers point to the inclusion of the reference to intentional acts and, coupled with their contention that the trial court erred by ignoring *Tegman*'s focus on intentional torts, they argue the jury was confused. They appear to argue this confusion invalidates the jury's proximate cause determination. We disagree.

Both parties extensively briefed the application of *Tegman* and its discussion of intentional conduct as it relates to chapter 4.22 RCW. By way of background, RCW 4.22.070 concerns apportionment of fault for at-fault entities. The statute provides:

> In all actions involving *fault* of more than one entity, the trier of fact shall determine the percentage of the total *fault* which is attributable to every entity which caused the claimant's damages. . . . If the trier of fact determines that the claimant . . . was not at *fault*, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate share of the [claimant's] total damages.

RCW 4.22.070(1) (emphasis added). The definition of "fault" includes "acts or omissions . . . that are in any measure negligent or reckless . . . ." RCW 4.22.015. However, fault does not include intentional acts or omissions. RCW 4.22.015; *see Tegman v. Accident & Medical Investigations, Inc.*, 150 Wn.2d 102, 109-110, 75 P.3d 497 (2003) (explaining that intentional acts are not included within the definition of fault).

In *Tegman*, the seminal case discussing chapter 4.22 RCW, our Supreme Court held that defendants are not jointly and severally liable under RCW 4.22.070 for any damages resulting from the "intentional acts" of others. 150 Wn.2d at 105. Our Supreme Court noted that when there are damages caused by negligent and intentional acts, the damages due to intentional acts must be segregated from damages caused by fault-based acts because RCW 4.22.070(1)(b) applies only to at-fault entities. *Id.* at 114-15. The court used the term "intentional tortfeasors" to refer to parties that were not at-fault. *Id.* at 114. It explained:

> Thus, RCW 4.22.070 provides that in actions involving a fault-free plaintiff and damages caused by both at-fault entities and *intentional tortfeasors*, the at-fault defendants are jointly and severally liable for the sum of their proportionate shares of the claimant's total damages. That is, negligent defendants are jointly and severally liable only for that part of the total damages that they negligently caused. The at-fault defendants are not jointly and severally liable under RCW 4.22.070(1)(b) for any damages resulting from intentional acts or omissions.

*Id.* (emphasis added). After the damages caused by intentional acts or omissions are segregated, then, all the negligent defendants causing those damages are jointly and severally liable. *Id.* at 115.

Here, the parties disagree about what *Tegman* means. The Provenchers argue that *Tegman* requires either proof of an intentional tort or specific intent to cause harm to demonstrate intentional acts or conduct. They note that support for their interpretation of *Tegman* can be found through the court's use of the term "intentional tortfeasors" in the opinion. They also contend that all of *Tegman*'s progeny involved intentional conduct that amounted to intentional torts.

The County reads *Tegman* and its progeny differently. The County contends that *Tegman* did not impose a requirement to prove either an intentional tort or the specific intent to harm the plaintiff. Instead, the County argues that *Tegman*'s use of the term "intentional tortfeasors" was

20

merely for party identification. The County essentially argues that volitional conduct by a party is all that is necessary to exclude them from being an at-fault defendant under RCW 4.22.070.

We observe that because neither chapter 4.22 RCW nor *Tegman* define "intentional acts," there may be a genuine dispute about whether an actor needs to have committed an intentional tort to be excluded from "fault" under the statute or whether merely intentional or volitional conduct is sufficient. *See, e.g.*, RCW 4.22.070, .015; *Tegman*, 150 Wn.2d at 109.

But whether we need to resolve this dispute depends on the resolution of the following question—assuming the trial court erred in its decisions interpreting *Tegman*, did the jury's proximate cause decision about the County make those errors harmless? As shown below, the answer is yes, any error is harmless. *See Lavington v. Hillier*, 22 Wn. App. 2d 134, 148, 510 P.3d 373 (explaining that an error is harmless when it does not materially affect the outcome of the trial), *review denied*, 200 Wn.2d 1010 (2022).

Again, the distinction between intentional conduct and non-intentional conduct (negligence or recklessness) under chapter 4.22 RCW is relevant only for allocation of damages *for actors that proximately caused the plaintiff's damages*. When the jury has decided that a party, here the County, did not proximately cause the plaintiff's damages, that party is not involved in damage allocation. In other words, the County is simply out of the picture. Any errors in the characterization of Eppens' conduct, the one party who did proximately cause the injuries, as either negligent or intentional, no longer implicates the County.

The Provenchers cast doubt on this straight-forward conclusion by arguing that the jury's proximate cause decision was corrupted by an erroneous proximate cause instruction (jury instruction 20). The Provenchers complain generally that the trial court erred when it instructed

the jury about intentional conduct for the purposes of chapter 4.22 RCW and that the jury became "confused." Br. of Appellants at 56. And as a source of this alleged confusion, the Provenchers point to the modification of the pattern form for the proximate cause jury instruction that included the concept of intentionality.

We disagree that there was any risk of confusion resulting from the modification of the proximate cause instruction (jury instruction 20). Read in context, the modification from the pattern instruction to include the words "intentionally" and "intentional acts" appears to have been designed to capture all of the labels for the behavior the jury was asked to consider—negligent and intentional conduct. CP at 1470; *see* 6 WPI 15.04. For both defendants, Eppens and the County, this was the universe of conduct the jury was evaluating. In fact, if jury instruction 20 had been left unaltered from the pattern form and referenced only negligent conduct, then the jury could have been conceivably even more confused in trying to assess whether proximate cause principles applied to Eppens if it decided that he was solely an intentional actor.

In the end, even assuming that the Provenchers are correct that a tortfeasor must commit an intentional tort (rather than just volitional conduct) before their conduct is excluded from joint and several liability under RCW 4.22.070, it does not matter. These concepts are relevant only to joint and several liability and damages allocation—concepts that are applied only *after* the jury decides which entities proximately caused the damages. And the jury, twice, found that the County was not an entity that proximately caused these injuries. Even assuming that the jury was confused about how to characterize Eppens' category of fault (as either negligent or intentional), we see no basis to conclude that this confusion possibly affected the jury's underlying proximate decision about the County. Simply put, once the jury found the County was not a proximate cause of the

22

Provenchers' damages, whether Eppens acted intentionally, recklessly, or merely negligently was irrelevant to the County's liability.[4]

### C. SUPERSEDING CAUSE INSTRUCTION

The Provenchers also appear to suggest that the jury's proximate cause determination was affected because the trial court wrongfully instructed the jury on superseding causes (jury instruction 21). The Provenchers suggest that this instruction "operating in conjunction" with the proximate cause instruction contributed to juror confusion. Reply Br. of Appellants at 29. The County responds that the Provenchers, by failing to object, invited any error about jury instruction 21. We hold the Provenchers failed to preserve the issue.

The Provenchers did not object to the superseding cause instruction below. We will generally not consider claims of error that were not objected to below unless an exception to RAP 2.5(a) applies. The Provenchers do not argue that any RAP 2.5(a) exception applies; instead, they suggest that "inherent authority" should be used to review this claim notwithstanding their failure to object below. Reply Br. of Appellants at 27. We do not see a viable exception to RAP 2.5(a) with respect to the giving of this jury instruction nor do we choose to exercise our inherent authority to review this unpreserved claim. If the superseding cause instruction was error, the Provenchers' failure to object deprived the trial court of the opportunity to correct it. Accordingly, we decline to consider the Provenchers' argument with respect to the instruction.

---

[4] The same is true for the Provenchers' challenge to jury instruction 11 (the definition of "intent" or "intentional"). CP at 1461. The Provenchers assert that the trial court erred by giving this instruction because it was an incorrect statement of the law on intentional conduct. But here again, the issue of intent was relevant to the jury's considerations only *after* it decided which parties were proximate causes of the injuries. So, any error in jury instruction 11 would not be relevant to the County's liability.

D.  THE PROVENCHERS' RFAS

With respect to their RFAs that Eppens failed to answer, the Provenchers argue that the trial court "mishandled" their CR 36 motion to have the admissions deemed admitted.  Br. of Appellants at 45.  But, like the jury instructions discussed above, this issue is irrelevant once the jury's proximate cause determination relating to the County is taken into account.

In their reply brief, the Provenchers assert that the admissions in the RFAs were "key to the CR 12(f)/CR 50(a) motions as to breach and causation."  Reply Br. of Appellants at 25.  The Provenchers attach importance to the fact that, if the RFAs were deemed admitted, the jury would have heard that Eppens "*admitted* that he did not intend to cause the collision and that he would not have sought to elude the police but for the deputies' pursuit."  Reply Br. of Appellants at 25.  In isolation, this "admission," such as it is, would be unremarkable and consistent with common sense.  At best, it might have had relevance to the jury's characterization of Eppens' conduct as either negligent or intentional.  But, as shown above, the labeling of Eppens' conduct is irrelevant to the County's liability because the jury decided the County was not proximately liable.  Thus, even assuming the trial court erred by failing to deem the RFAs to Eppens admitted, any error by the trial court was harmless.

E.  OTHER JURY INSTRUCTIONS

Finally, the Provenchers assign error to several other jury instructions (jury instructions numbers 6, 9, and 28) given by the trial court and to the trial court's failure to give its "curative instruction" defining intentional conduct. Br. of Appellants at 49.  Like the arguments above, none of these assignments of error change the dispositive result from the jury's proximate cause determination in favor of the County.

Many of these assignments of error appear to be designed to be supportive of the Provenchers' more general argument that the trial court erred in its interpretation of *Tegman* and intentionality under chapter 4.22 RCW. For example, the Provenchers assign error to jury instruction 6 (instruction explaining the parties' claims), jury instruction 28 (the apportionment of fault instruction), and the trial court's failure to give the Provenchers' proposed "curative instruction" that "properly defined intentional conduct for the jury" because they all touch upon intentional conduct. Br. of Appellants at 49. But the Provenchers fail to provide any meaningful analysis addressing these instructions. We therefore presume our discussion above related to *Tegman* and chapter 4.22 RCW addresses these issues, and we do not address these assignments of error separately. *See* RAP 10.3(a)(6); *Cook v. Brateng*, 158 Wn. App. 777, 794-95, 262 P.3d 1228 (2010) (court need not address arguments unsupported by relevant authority, references to the record, or meaningful analysis).

The Provenchers also assign error to jury instruction 9 (giving the County the burden to prove Eppens "intentionally caused" the harm). CP at 1459. However, the Provenchers failed to object to instruction 9 below and make no argument related to RAP 2.5(a), so their assignment of error is waived.

F. SUMMARY

While being pursued by County law enforcement, Eppens collided with Dana Provencher's car. The collision was tragic and caused the Provenchers' significant injuries. But following a trial, the jury determined that the County was not a proximate cause of the collision.

Proximate cause is ordinarily the province of the jury. *Dewar v. Smith*, 185 Wn. App. 544, 563, 342 P.3d 328, *review denied*, 183 Wn.2d 1024 (2015). And the Provenchers have not shown

25

that any of the alleged trial court errors they have identified should result in stripping this decision from the jury.

II. COSTS ON APPEAL

The Provenchers request that they be awarded costs on appeal. Under RAP 14.1(a) provides that the "appellate court determines costs in all cases after the filing of a decision terminating review . . . ." But costs are awarded only if the party "substantially prevails" on appeal. RAP 14.2. Because the Provenchers have not substantially prevailed on appeal, we deny their request for costs. *See Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 300, 38 P.3d 1024, *review denied*, 147 Wn.2d 1016 (2002).

CONCLUSION

Both parties focus their arguments on the County's potential liability to the Provenchers. Given the application and effect of chapter 4.22 RCW, the County's potential liability was, of course, intertwined with the characterization of Eppens' conduct, causing the parties to engage in extensive discussions in this appeal about Eppens and the tension between negligent and intentional conduct. We recognize that because we determined that the Provenchers' assignments of error were harmless as to the County, we chose not to substantively address some of them.

Only the Provenchers and the County participated in this appeal. Eppens did not. It is plausible that some of the Provenchers' claimed errors could have had tangible implications to *Eppens*' liability. Addressing them could have resulted in the judgment being affirmed as to the County, but perhaps a different result as to Eppens. This is merely speculation—neither party has briefed those potential consequences to Eppens' liability. Thus, in the end, we have placed our focus where the parties have placed theirs; that is, whether the Provenchers' claims implicate the

No. 59265-7-II

County's liability. *See Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023) (explaining that Washington courts generally follow the rule of party presentation).

Accordingly, we affirm the judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

LEE, P.J.

CHE, J.